Cite as 2020 Ark. 36

# SUPREME COURT OF ARKANSAS

No. CV-19-904

| | |
|---|---|
| | **Opinion Delivered:** January 23, 2020 |
| STEPHANIE POTTER BARRETT<br>          APPELLANT/CROSS-APPELLEE | APPEAL FROM THE PULASKI<br>COUNTY CIRCUIT COURT, SIXTH<br>DIVISION |
| V. | [NO. 60CV-19-8051] |
| JOHN THURSTON, IN HIS OFFICIAL<br>CAPACITY AS SECRETARY OF STATE<br>FOR THE STATE OF ARKANSAS;<br>CHARLES WELCH, CLAUDIA<br>SPEIGHTS, AND KAREN WIEMAN, IN<br>THEIR OFFICIAL CAPACITIES AS THE<br>COMMISSIONERS OF THE CLARK<br>COUNTY ELECTION COMMISSION;<br>RALPH EDDS, GENE HALEY, AND<br>ELMER BEARD, IN THEIR OFFICIAL<br>CAPACITIES AS THE COMMISSIONERS<br>OF THE GARLAND COUNTY<br>ELECTION COMMISSION; LORI WEST,<br>DEBBIE MARSH, AND CYNTHIA<br>NEWSOM, IN THEIR OFFICIAL<br>CAPACITIES AS THE COMMISSIONERS<br>OF THE HEMPSTEAD COUNTY<br>ELECTION COMMISSION; JAMES<br>HOUPT, JERRY CRAYCRAFT, AND<br>WALTER GRANT, IN THEIROFFICIAL<br>CAPACITIES AS THE COMMISSIONERS<br>OF THE HOT SPRING COUNTY<br>ELECTION COMMISSION; ROBERT<br>WILLIAMS, GLEN SEMMLER, AND<br>ANGELA ALLEN, IN THEIR OFFICIAL<br>CAPACITIES AS THE COMMISSIONERS<br>OF THE HOWARD COUNTY<br>ELECTION COMMISSION; BILLY BOB<br>POUNDS, DON LAMON, AND LESLIE | HONORABLE TIMOTHY DAVIS FOX,<br>JUDGE<br><br>AFFIRMED ON DIRECT APPEAL AND<br>ON CROSS-APPEAL. |

CARTER, IN THEIR OFFICIAL CAPACITIES AS THE COMMISSIONERS OF THE LITTLE RIVER COUNTY ELECTION COMMISSION; LEE LANE, GARY EVELD, AND RUSSELL PARISH IN THEIR OFFICIAL CAPACITIES AS THE COMMISSIONERS OF THE LOGAN COUNTY ELECTION COMMISSION; SANDY BUCHANON, CHARLOTTE FULLER, AND BRANDON COGBURN, IN THEIR OFFICIAL CAPACITIES AS THE COMMISSIONERS OF THE MILLER COUNTY ELECTION COMMISSION; ROBERT WALTHER, ALMA BLACK, AND MARK WHISENTHUNT, IN THEIR OFFICIAL CAPACITIES AS THE COMMISSIONERS OF THE MONTGOMERY COUNTY ELECTION COMMISSION; JOHN BENJAMIN, TERRY HUTSON, AND JAMES O'NEAL, IN THEIR OFFICIAL CAPACITIES AS THE COMMISSIONERS OF THE PIKE COUNTY ELECTION COMMISSION; LANDON COPELIN, BERNARD MIZE, AND J. DAVID RAY, IN THE OFFICIAL CAPACITIES AS THE COMMISSIONERS OF THE POLK COUNTY ELECTION COMMISSION; STEPHEN HOLLAND, TOMMY VANOVER, AND RONNIE POWELL, IN THEIR OFFICIAL CAPACITIES AS THE COMMISSIONERS OF THE SCOTT COUNTY ELECTION COMMISSION; DAVID DAMRON, SAM TERRY, AND LEE WEBB, IN THEIR OFFICIAL CAPACITIES AS THE COMMISSIONERS OF THE SEBASTIAN COUNTY ELECTION COMMISSION; GAINES SOUTHWORTH, GARY WALKER, AND BARBARA HOLT, IN THEIR OFFICIAL CAPACITIES AS THE

COMMISSIONERS OF THE SEVIER
COUNTY ELECTION COMMISSION;
AND GREG BLAND, HOWARD
ORSBURN, AND MONTIE SIMS, IN
THEIR OFFICIAL CAPACITIES AS THE
COMMISSIONERS OF THE YELL
COUNTY ELECTION COMMISSION
                                    APPELLEES


EMILY L. LENGEFELD
            APPELLEE/CROSS-APPELLANT

---

**SHAWN A. WOMACK, Associate Justice**


Appellant Stephanie Potter Barrett appeals from the Pulaski County Circuit Court's order finding that Appellee Emily White Lengefeld is a certified candidate for the position of Arkansas Court of Appeals District 4, Position 2. Lengefeld also filed a cross-appeal in which she contends (1) Barrett lacked standing to establish subject-matter jurisdiction; (2) Barrett's petition failed to comply with the requirements of Arkansas Code Annotated section 7-5-801(d) (Repl. 2018); (3) that Arkansas Code Annotated sections 7-10-103(f)(1)(B)(ii) (Repl. 2018) and 7-7-305(c)(1)(B) (Repl. 2018) are special or local legislation violative of amendment 14 of the Arkansas Constitution; and (4) Barrett failed to exhaust all administrative relief. We affirm both the direct appeal and the cross-appeal.

I. *Background*

3

Emily White Lengefeld was appointed district judge of the 33rd District on March 19, 2018. She is currently a candidate for the Court of Appeals District 4, Position 2. Lengefeld filed as a candidate without paying a filing fee in accordance with Arkansas Code Annotated section 7-10-103(c) by circulating petitions. She filed both her petition to be placed on the ballot as well as her political-practices pledge under the name "Judge Emily White." Lengefeld was later certified to the ballot by the Secretary of State as "Judge Emily White." Prior to 2019, Lengefeld resided and was domiciled in Grant County, Arkansas, which is outside District 4, from 2007 through 2018. In February 2019, Lengefeld purchased a home in Hot Spring County for the purpose of running for Position 2. Lengefeld also moved her voter-registration and personal property assessment to Hot Spring County in February 2019.

Stephanie Potter Barrett, also a candidate for Position 2, filed a petition in the Pulaski County Circuit Court that requested a writ of mandamus and declaratory judgement declaring Lengefeld's petition for candidacy and political-practices pledge invalid and removal of Lengefeld from the ballot for the election for the office of Arkansas Court of Appeals District 4, Position 2, to be held on March 3, 2020. In her petition, Barrett alleges that Lengefeld is not a resident of District 4, that she is not authorized to use the title "Judge" on the ballot in the election, and the name under which she filed, "Judge Emily White," is not her name as it should appear on the ballot. For these reasons, Barrett asserts Lengefeld has not met the qualification requirements to seek a position on

4

the Court of Appeals under amendment 80, section 16 to the Arkansas Constitution and Arkansas Code Annotated section 7-5-201.

On November 18, 2019, the trial court held an expedited hearing on the merits of the petition and Lengefeld's response. In its final order entered on November 27, 2019, the circuit court concluded Lengefeld is a citizen, registered voter, and resident of District 4, finding that Barrett failed to meet her burden of proof with respect to the issue of residency. The court found "Emily White" is an appropriate name to be listed on the ballot and denied Barrett's request to require White Lengefeld to use the surname "Lengefeld." Consequently, Barrett's request to remove Lengefeld from the ballot for failure to use the surname "Lengefeld" was also denied. As an appointed judge and candidate for the Court of Appeals, the court held that, pursuant to sections 7-10-103(f)(1)(B)(ii) and 7-7-305(c)(1)(B), Lengefeld may not use the title of "Judge" on the ballot. Lengefeld's motions to dismiss for lack of standing, failure to verify the complaint, and failure to exhaust all remedies were denied. The court also rejected Lengefeld's counterclaim challenging the constitutionality of relevant election statutes. The circuit court issued a mandamus order to the Secretary of State and Respondent County Boards of Election Commissioners to strike the title of "Judge" from Lengefeld's ballot name of "Emily White." Barrett filed a timely notice of appeal from the circuit court's order, and Lengefeld filed a notice of cross-appeal.

II. *Standing*

On cross-appeal, Lengefeld argues the circuit court erred in finding Barrett had standing to establish subject matter jurisdiction. The question of standing is a threshold

5

issue and should be addressed first. *See Bomar v. Moser*, 369 Ark. 123, 128, 251 S.W.3d 234, 239 (2007). The circuit court found that Barrett was a certified candidate for the position of Arkansas Court of Appeals District 4, Position 2 and that she is a citizen, resident, and qualified elector in Miller County, Arkansas. Lengefeld asserts Barrett failed to present evidence that she is a registered voter in one of the counties that comprise District 4, and therefore, the circuit court should have dismissed the case.

Barrett's petition contained the following statement:

5. Petitioner Stephanie Potter Barrett is (sic) candidate and a registered voter residing in the Arkansas Court of Appeals District 4, in Texarkana, Miller County, Arkansas. Petitioner has the right for the above-mentioned declaratory judgment and subsequent writ issued that mandates all Respondents follow Amendment 80 § 16 of the Arkansas Constitution, Arkansas Code Annotated § 7-10-103, and § 7-7- 305.

The Arkansas Secretary of State John Thurston, in his official capacity, filed an answer to Barrett's petition in which he admitted Barrett is a candidate and registered voter:

5. The Secretary admits that Petitioner Stephanie Potter Barrett is a candidate and a registered Voter, as alleged in paragraph 5. Paragraph 5 otherwise contains factual allegations which are denied for lack of sufficient information.

In Lengefeld's response to Barrett's petition, she failed to raise the issue of standing. It was not until the conclusion of testimony that the issue was asserted. The Arkansas Rules of Civil Procedure require that any matter constituting an avoidance or affirmative defense must be outlined in a party's responsive pleading. *See* Ark. R. Civ. P. 8(c); *Poff v. Brown*, 374 Ark. 453, 454, 288 S.W.3d 620, 622 (2008). The failure to plead an affirmative defense can result in the waiver and exclusion of the defense from the case. *Seth v. St.*

6

*Edward Mercy Med. Ctr.*, 375 Ark. 413, 417, 291 S.W.3d 179, 183 (2009). Because Lengefeld failed to affirmatively plead standing, the defense is deemed to be waived.

III. *Direct Appeal*

Barrett's central point on appeal is that the circuit court erred in determining Lengefeld is a qualified elector of District 4, thereby qualifying her as a candidate for Position 2. As the moving party, Barrett had the burden of proving by a preponderance of the evidence that Lengefeld failed to reside within District 4 when she filed her candidacy. *See Womack v. Foster*, 340 Ark. 124, 8 S.W.3d 854 (2000). The standard of review in a bench trial is whether the circuit court's findings are clearly erroneous. *Searcy Farm Supply, LLC v. Merchs. & Planters Bank*, 369 Ark. 487, 496–97, 256 S.W.3d 496, 503 (2007). A finding is clearly erroneous when, although there is evidence to support it, a reviewing court is left with a firm conviction that a mistake has been committed. *Id.*

Amendment 80, section 16(D) to the Arkansas Constitution governs the qualifications and terms of justices and judges, providing:

> All Justices and Judges shall be *qualified electors* within the geographical area from which they are chosen, and Circuit and District Judges shall reside within that geographical area at the time of election and during their period of service. A geographical area may include any county contiguous to the county to be served when there are no qualified candidates available in the county to be served.

(Emphasis added.) Therefore, to qualify as a judicial candidate for the Court of Appeals District 4, Position 2, Lengefeld had to be a qualified elector from a county within District 4 when she filed as a candidate for the office.

The circuit court found Lengefeld, at all relevant times, to be a citizen, registered voter, and resident of Hot Spring County, Arkansas. Barrett contends the circuit court mistakenly relied on residency without regard to domicile. Under Arkansas Code Annotated section 7-5-201(b) (Repl. 2018), "voting residence" is a voter's domicile; domicile is defined as a person's fixed habitation, and a change in domicile may only be made by an act of abandonment, joined with the intent to remain in another place. Barrett argues Lengefeld never "abandoned" her Grant County home and, as a result, remains domiciled there. This distinction between "residence" and "domicile" is not contemplated by amendment 80--it simply requires that justices and judges be qualified electors within the geographical area from which they are chosen.

In reaching its conclusion that Lengefeld is a resident of Hot Spring County for the upcoming election, the circuit court relied on this court's decision in *State v. Jernigan*. In *Jernigan*, we stated that in determining the residency of voters and public officials, this court considers (1) whether a person was physically present in a particular location, or (2) whether a person intended to establish a domicile in a particular location. 2011 Ark. 487, at 10, 385 S.W.3d 776, 782. In other words, if a candidate is unable to establish residency by showing physical presence in the requisite location, this court has allowed a candidate to establish residency by showing domiciliary intent in the requisite location. *Id.*

In the present case, Lengefeld has established that she is physically present in Hot Spring County. Lengefeld purchased a home in Hot Spring County in 2019 and testified that she resides at this property with her family. She has also registered to vote and assessed

8

her personal property in Hot Spring County for 2019. As evidence that Lengefeld is not a resident of District 4, Barrett calls attention to the fact that Lengefeld's children continue to attend school in Grant County, that she still spends several nights a week in Grant County, and that she still owns her Grant County home. Nevertheless, the circuit court concluded that Barrett failed to meet her burden with the proffered evidence. This court gives due deference to the superior position of the circuit court to determine the credibility of the witnesses and the weight to be accorded their testimony. *Lee v. Daniel*, 350 Ark. 466, 470, 91 S.W.3d 464, 466–67 (2002). Further, it is within the province of the trier of fact to resolve conflicting testimony. *Id.* Lengefeld's actions and testimony indicate that she is physically present in Hot Spring County––lingering connections to Grant County do not undermine this point. Because Barrett fails to demonstrate by a preponderance of the evidence that Lengefeld is not a resident and legal voter of Hot Spring County, the circuit court's conclusion that Lengefeld is a qualified elector of District 4 pursuant to amendment 80, section 16(D) is not clearly erroneous.

Barrett next argues Lengefeld falsified her political practices pledge in bad faith and the circuit court erred in amending this falsified pledge. Lengefeld filed as a candidate by petition rather than pay the filing fee. In accordance with Arkansas Code Annotated section 7-10-103(c)(1), candidates filing by petition are required to file a political-practices pledge wherein they must request the name of the candidate to be placed on the ballot. Arkansas Code Annotated section 7-10-103(f)(1) provides which candidates may use a judicial title on the ballot:

(B)(ii) A candidate **may use as the prefix the title of a nonpartisan judicial office** in an election for a nonpartisan judicial office **only if**:

> (a) The candidate is currently serving in a judicial position to which the candidate has been elected in the last election for the office; or
>
> (b) The candidate:
>
>> (1) Is a **candidate for the office of circuit judge or district judge**;
>>
>> (2) Is currently serving in the position of circuit judge or district judge as an appointee; **and**
>>
>> (3) Has been serving in that position for at least twelve (12) months.

(Emphasis added.)

On September 17, 2019, Lengefeld signed her political practices pledge and printed her name as it was to appear on the ballot as "Judge Emily White." Included on the pledge is the language of Arkansas Code Annotated section 7-7-305(c)(2) (Repl. 2018), which states "[t]he person filing for office shall include his or her surname in addition to any given names permitted under subdivision (c)(1)(A) of this section." Failure of a candidate to sign and file the pledge will result in the candidate's removal from the ballot. *See* Ark. Code Ann. § 7-6-102(e)(1) (Repl. 2018). Barrett now contends Lengefeld falsified her pledge by listing "Judge" in her ballot title and listing her surname as "White" instead of her married name, "Lengefeld."[1] Barrett submits that the filing of a political-practices

---

[1]Additionally, Barrett makes the argument that the voter-signed petitions that Lengefeld submitted to be placed on the ballot had the name "Judge Emily White" on them and, as such, the petitions were defective because the use of the title "Judge" is prohibited by law. Barrett fails to further develop the issue and, as a result, we will not address this point.

10

pledge with inaccurate information is tantamount to not filing at all and should result in the removal of Lengefeld from the ballot.

Pursuant to the language of section 7-10-103(f)(1), a candidate may use the title "Judge" only if the candidate is currently serving in a judicial position to which they have been elected or if they are a candidate for circuit or district judge and they are currently serving as an appointed circuit or district judge and have been serving in that capacity for at least twelve (12) months. Subsection (f)(5) further provides that "[a] candidate shall not change the form in which his or her name will be printed on the ballot after the deadline for filing the political practices pledge." As an appointed judge and candidate for the Court of Appeals, Lengefeld is not authorized to use the title "Judge" on the ballot, however, Barrett argues subsection (f)(5) prohibited the circuit court from striking the title "Judge" from Lengefeld's political-practices pledge after the deadline. Yet by the plain language of the statute, only candidates are barred from making modifications to their pledges past the deadline––the law does not restrict courts from ordering a change. Moreover, the current law only sanctions those who fail to sign the pledge; there is no penalty for those found to have included inaccurate information on the pledge. Importantly, we have recognized that it is a fundamental right to become a candidate for public office, and any law by which this inherent right of the citizen is diminished or impaired ought to receive liberal construction in favor of the citizen desiring to exercise the right. *Populist Party of Ark. v. Chesterfield*, 359 Ark. 58, 195 S.W.3d 354 (2004). In an attempt to disqualify Lengefeld as a candidate, Barrett seeks to impute a penalty under section 7-6-102 that does not exist. The

11

inaccuracies of Lengefeld's pledge should not alone serve as the basis for her disqualification.

As for the matter of which surname Lengefeld was required to use on her pledge, the statute only requires that a candidate use his or her "surname." Ark. Code Ann. § 7-7-305(c)(2). Lengefeld testified that her full name is now "Emily Lorraine White Lengefeld," her birth name was "Emily Lorraine White," and "Lengefeld" is her married surname. Lengefeld further testified that she commonly uses her maiden and married surnames interchangeably in both her personal and professional life. She was appointed district court judge under the name "Emily White." Under the names "Emily Lorraine White Lengefeld" and "Emily L. White Lengefeld," Lengefeld registered to vote, obtained a driver's license, and was acknowledged in a deed. Both "White" and "Lengefeld" are surnames and it is common practice for women to maintain their maiden names for professional purposes. The record indicates that Lengefeld is known professionally as "White"; her use of her maiden name on the ballot title does not serve to undermine the spirit of the political-practices pledge by obfuscating her true identity, nor does it run afoul of the applicable statute, which requires only that a candidate use their "surname."

Finally, Barrett argues the circuit court erred in failing to award court costs. Barrett, however, made no such request at the circuit court level and now raises a request for costs for the first time on appeal. This court will not consider matters raised for the first time on appeal. *Dixon v. State*, 2014 Ark. 97, at 4.

IV. *Cross-Appeal*

12

On cross-appeal, Lengefeld argues Barrett's petition failed to adhere to the verification requirements of Arkansas Code Annotated section 7-5-801. Section 7-5-801(d) provides that in an action brought by a candidate to contest an election certification, the complaint must be verified by an affidavit of the contestant. Lengefeld claims Barrett failed to file an affidavit and that such failure should result in the dismissal of the action. This court addressed the applicability of section 7-5-801 in *Tumey v. Daniels*. In *Tumey*, this court stated that section 7-5-801 is a post-election procedure available only to a competing candidate who claims to be the rightful nominee or victor. 359 Ark. 256, 260, 196 S.W.3d 479, 482 (2004). Pre-election attacks on a candidate's eligibility are brought under section 7-5-207(b), which has no such verification requirement. *Id.* at 260, 196 S.W.3d at 482. Thus, Barrett's petition was compliant with Arkansas law.

Lengefeld next challenges the constitutionality of sections 7-10-103(f)(1)(B)(ii) and 7-7-305(c)(1)(B). She argues these sections arbitrarily distinguish between candidates who have been appointed to the elective office of judge and candidates who have been appointed to other elective offices. Arkansas law requires the Attorney General to be given notice when a statute is alleged to be unconstitutional. *See* Ark. Code Ann. § 16-111-111 (Repl. 2016). The purpose of the notice requirement is to prevent a statute from being declared unconstitutional in a proceeding which might not be a fully adversary and complete adjudication. *Prater v. St. Paul Ins. Co.*, 293 Ark. 547, 739 S.W.2d 676 (1987). Because Lengefeld failed to give notice of her constitutional challenge, this argument is not preserved for review. *See Reagan v. Piggott*, 305 Ark. 77, 805 S.W.2d 636 (1991).

13

For Lengefeld's final point on cross-appeal, she argues the circuit court lacked jurisdiction to hear Barrett's petition because her complaint should have been filed with the State Board of Election Commissioners. The basis for Lengefeld's contention is Arkansas Code Annotated section 7-4-101(f)(9), which grants the board the authority to investigate alleged violations, render findings, and impose disciplinary action for violations of election and voter registration laws.

This court has previously addressed the issue of administrative exhaustion in ballot title cases in *State v. Craighead Cty. Bd. of Election Comm'rs*. There, we stated that an action for mandamus and declaratory relief is the proper mechanism for enforcing the rights set forth in section 7-5-207, which prohibits the inclusion of an ineligible candidate on an election ballot. 300 Ark. 405, 412, 779 S.W.2d 169, 173 (1989). We further stated the board may not exercise discretion or make findings of fact concerning the eligibility of a candidate. *Id.* at 410, 779 S.W.2d at 172. That determination may only be made by a court, and the court may then direct the board to either place the candidate's name on the ballot or remove it. *Id.* The circuit court clearly had jurisdiction to hear Barrett's petition.

V. *Conclusion*

We hold that the circuit court correctly determined that Emily Lengefeld is a certified candidate for the position of Arkansas Court of Appeals District 4, Position 2. Accordingly, we affirm both the direct appeal and the cross-appeal. The mandate shall issue immediately.

Affirmed on direct appeal and on cross-appeal.

14

WOOD and WYNNE, JJ., concur.

**RHONDA K. WOOD, Justice, concurring.** Fundamental principles of constitutional interpretation require us to "read laws as they are written" and to give "words . . . their obvious and natural meaning." *Brewer v. Fergus*, 348 Ark. 577, 580–81, 79 S.W.3d 831, 832 (2002). We should interpret constitutional provisions so that each word carries meaning. *Forrester v. Daniels*, 2010 Ark. 397, at 7, 373 S.W.3d 871, 875. Applying this textualist approach to interpreting our Constitution precludes me from joining the majority's opinion. Though I would still affirm the circuit court's order, I must concur due to my disagreement with the majority's analysis.

Amendment 80, section 16(D) contains two independent requirements: (i) all Justices and Judges shall be qualified electors within the geographical area from which they are chosen ("qualified-elector requirement") *and* (ii) Circuit and District judges shall reside within that geographical area at the time of the election and during their period of service ("residency requirement"). The majority maintains that Amendment 80 does not contemplate a distinction between residence and domicile. However, the Amendment does contain a distinction between being a qualified elector in a geographical area and residing there. In my view, a "qualified elector" is one who is domiciled in the relevant geographical district.

As Amendment 80 requires that judges be "qualified electors" without defining the term, construing the constitution as a whole, our next step is to determine if other provisions give guidance. *See Forrester*, 2010 Ark. 397, at 7, 373 S.W.3d at 875 (interpreting

15

Amendment 80 by stating that the constitution "must be considered as a whole, and every provision must be read in light of other provisions relating to the same subject matter"). Article 3, section 1 of the Arkansas Constitution is titled "Qualifications of Electors" and sets forth the constitutional requirements. A person is qualified to vote when he or she is, among other things, "[l]awfully registered to vote in the election." Ark. Const. art. 3, § 1(4). The General Assembly has established certain voter registration requirements. Ark. Code Ann. § 7-5-201 (Repl. 2018). Under this law, a person cannot be qualified to vote in more than one precinct at any one time. Ark. Code Ann. § 7-5-201(c). Further, one's "voting residence *shall be* a voter's domicile." Ark. Code Ann. § 7-5-201(b)(1) (emphasis added).

Read together, Amendment 80 requires that a judicial candidate be a qualified elector; Article 3, section 1 requires that the qualified elector be a lawfully registered voter; and the General Assembly has established that voting residence shall be a voter's domicile. Textually, one is a qualified elector only in the precinct in which he or she is domiciled. *See, e.g.*, *Clement v. Daniels*, 366 Ark. 352, 355, 235 S.W.3d 521, 524 (2006) ("Thus, for the purpose of a voter or a public official, a person does not have two domiciles with a right to choose between them; his domicile is either at one place or the other."). The majority, however, extracts the qualified-elector requirement from Amendment 80 and gives residence redundant application.

The majority relies on *State v. Jernigan* for support. But the *Jernigan* court addressed only a residency requirement for municipal officers, not the qualified-elector requirement for judicial candidates. The statute there provided that a candidate for mayor "must reside

16

within the corporate municipal limits." Ark. Code Ann. § 14-42-201(c)(1) (Supp. 2019). We noted that *residency* could be proved by (i) physical presence *or* (ii) domiciliary intent: "In other words, if a candidate was unable to establish *residency* by showing physical presence in the requisite location, this court has allowed a candidate to establish *residency* by showing domiciliary intent in the requisite location." 2011 Ark. 487, at 9–10, 385 S.W.3d at 782 (emphasis added).

*Jernigan* would be relevant if we were addressing Amendment 80's residency requirement for Circuit and District judges. But the present case requires us to interpret the qualified-elector requirement, which applies to all judicial candidates. By citing exclusively to *Jernigan*, the majority makes residency the primary consideration under both. This interpretation violates the surplusage canon of interpretation: "[E]very word and every provision is to be given effect. . . . None should needlessly be given an interpretation that causes it to duplicate another provision or to have no consequence." Antonin Scalia & Bryan Garner, *Reading Law: The Interpretation of Legal Texts* 174 (2012); *accord Forrester, supra*. By conflating the residency requirement with the qualified-elector requirement, the majority duplicates the former and gives the latter no consequence.

The amendment's drafters were aware of the difference between residency and domicile. *Cf. Quinney v. Pittman*, 320 Ark. 177, 184, 895 S.W.2d 538, 542 (1995) (noting that the legislature "was aware of the difference between the words 'residency' and 'domicile'"). Had they intended residency to control the entire inquiry, they would not have included the qualified-elector requirement. If the intent were as the majority suggests,

17

then Amendment 80 should read as follows: (i) all Justices and Judges shall be ~~qualified electors within~~ **residents of** the geographical area from which they are chosen *and* (ii) Circuit and District judges shall reside within that geographical area at the time of the election and during their period of service. Our rules of interpretation require us to inquire and to give meaning when the drafters use different terminology. We must give a distinct meaning to the term "qualified electors" that is consistent with Amendment 80's text and well-settled interpretive principles.

Even though I part ways with the majority's analysis, I would still affirm the circuit court's order. The circuit court concluded that appellant failed to meet her burden of proof with regard to the issue of residency. The court made no ruling regarding the issue of domicile. Because appellant failed to obtain a ruling on this issue, we are precluded from reviewing it on appeal. *TEMCO Constr., LLC v. Gann*, 2013 Ark. 202, at 9, 427 S.W.3d 651, 657; *see also Fisher v. Valco Farms*, 328 Ark. 741, 748, 945 S.W.2d 369, 373 (1997) ("It was appellant's burden to obtain a ruling, and the absence of a ruling constitutes a waiver of this issue on appeal.").

WYNNE, J., joins.

*David J. Potter*; and *Potter Law Firm, LLP*, by: *Jacob S. Potter*, for appellant.

*Waymack Standerfer Law*, by: *Jennifer A. Waymack*; and *Jeff Priebe Law Firm*, by: *Jeff Priebe*, for appellee Emily L. Lengefeld.